## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| **ROBIN TOWNSEND GRIGGS,** | ] |
| | ] |
| **Plaintiff,** | ] |
| | ] |
| **v.** | ]          **MC-07-BE-1127-E** |
| | ] |
| **THE CITY OF GADSDEN REVENUE** | ] |
| **DEPARTMENT, et al.,** | ] |
| | ] |
| **Defendants.** | ] |

## MEMORANDUM OPINION

This case comes before the court on the "Defendants' Motion for Summary Judgment" (doc. 32). The parties have fully briefed the motion for summary judgment.[1] For the reasons stated below, the defendants' motion for summary judgment (doc. 32) will be GRANTED. A separate order to that effect will be entered simultaneously.

## I. BACKGROUND

The plaintiff, Robin Griggs, was the proprietor of The Golden Goose lounge in Gadsden, Alabama. The defendants are the City of Gadsden, the City of Gadsden Revenue Department,[2] and two of its revenue officers, Jack Young and Linda Barrett. The claims in this case arise out of the plaintiff's bankruptcy proceedings as well has her multiple convictions for, inter alia, failures to file sales tax returns and liquor gross receipts affidavits and for operating without a business license. As a result of these convictions, the plaintiff was placed on probation and

---

[1] The plaintiffs filed a response to the reply (doc. 39), which the court struck because the plaintiff did not request leave to file such a response and this court's briefing schedule does not allow such a response. (*See* Order, doc. 41).

[2] As discussed *infra*, the "Revenue Department" will be dismissed as a party, because the "Revenue Department" is not an entity separate from the City of Gadsden.

fined.  A brief recounting of the convictions and bankruptcy proceedings is necessary to understand the posture of the case now before this court.

On August 12, 2004, the Gadsden Municipal Court found the plaintiff guilty of failing to file liquor tax returns and occupational license fee returns for February to June 2004.  On September 27, 2005, the Municipal Court found the plaintiff guilty of failing to file liquor gross receipts affidavits for April to July 2005.  On June 8, 2006, the Municipal Court found her guilty of doing business without a license, violation date of April 18, 2006.  For her convictions, the plaintiff was fined and placed on probation.  The plaintiff appealed those convictions, and her appeals are still pending in the municipal courts.

On March 15, 2007, the Municipal Court found the plaintiff guilty of failing to file sales tax returns for the months of April 2001 through December 2005, failing to file occupational license fee returns for the months of October and November 2006, and failing to file liquor gross receipts affidavits for October and November 2006.  The plaintiff appealed those convictions, and her appeal is still pending in the municipal courts.  At the same hearing on March 15, 2007, the Municipal Court scheduled a hearing to consider revoking the plaintiff's probation because of her repeated failures to file necessary returns with the revenue department.

On May 1, 2007, the plaintiff filed a Chapter 13 voluntary petition in the United States Bankruptcy Court for the Northern District of Alabama.  On May 2, the bankruptcy court clerk filed a notice of nonpayment of filing fees and a notice ordering the plaintiff to show cause why the case should not be dismissed for failure to file numerous bankruptcy documents, including a summary of schedules, a Chapter 13 plan summary, and employee income records.  On May 4, the Bankruptcy Noticing Center mailed notice of the plaintiff's Chapter 13 proceedings to the City of Gadsden via first class mail, which the City received on May 8.

On May 3-5 and May 7, revenue officials (either Jack Young or Linda Barrett), sometimes accompanied by a Gadsden police officer, served the plaintiff with summonses for the charges of doing business without a license on each of those days. On May 15, 2007, the Municipal Court found that the plaintiff had violated her probation and that the plaintiff was guilty of doing business without a license, violation dates of May 3-5 and May 7, 2007.  The plaintiff appealed the conviction for doing business without a license, and her appeal is still pending in the municipal courts.  Because she violated her probation, the plaintiff was put in jail for four days.

On May 8, 2007, the plaintiff filed an adversary proceeding in the Bankruptcy Court seeking relief under 11 U.S.C. § 362, for violation of the automatic stay by defendants caused by her prosecution in the Municipal Court for operating a business without a license; relief under 42 U.S.C. §§ 1983 and 1985, for civil rights violations under the Fourth and Fourteenth Amendments of the U.S. Constitution; and relief under Alabama law, for invasion of privacy, malicious prosecution, and negligence.  Because resolution of those claims involved the consideration of Title 11 as well as other laws of the United States and Alabama, the defendants sought withdrawal of the matter from the Bankruptcy Court.  This court granted the defendants' motion and withdrew the case on July 9, 2007.

On June 21, 2007, the Bankruptcy Court held a show cause hearing and determined that the Chapter 13 case should be dismissed until the plaintiff presented income records, at which point the case could be reinstated.  No motion to reinstate has been filed, and that case has not been reinstated.

On November 11, 2007, the plaintiff filed an amendment to her complaint in this court (doc. 12), which the defendants answered (doc. 14).  On April 4, 2008, the defendants moved for

summary judgment (doc. 32).

## II. STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure.  Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56.  When a district court reviews a motion for summary judgment must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).  The moving party can meet this burden by offering evidence showing no dispute of material fact or by showing that the non-moving party's evidence fails to prove an essential element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322-23.  Rule 56, however, does not require "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim."  *Id.*

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)   In responding to a motion for summary

judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a *genuine issue for trial*.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (emphasis added); *see also* Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e), 28 U.S.C. app. ("The very mission of summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.").  The moving party need not present evidence in a form admissible at trial; "however, he may not merely rest on [the] pleadings." *Celotex*, 477 U.S. at 324.  If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted.  *Anderson*, 477 U.S. at 249-50 (citations omitted).

In reviewing the evidence submitted, the court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party.  *Anderson*, 477 U.S. at 254; *Cottle v. Storer Commc'n, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988).  The court must refrain from weighing the evidence and making credibility determinations, because these decisions fall to the province of the jury.  *See Anderson*, 477 U.S. at 255; *Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999).  Furthermore, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party.  *Graham*, 193 F.3d at 1282.  The non-moving party "need not be given the benefit of every inference but only of every reasonable inference."  *Id.*  Instead, the evidence of

the non-moving party "is to be believed and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. After both parties have addressed the motion for summary judgment, the court must grant the motion *if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

### III. DISCUSSION

**A.    Claims Against "Revenue Department"**

The plaintiff named the "City of Gadsden Revenue Department" as a defendant in this action. The defendants maintain that no such legal entity exists, but that the revenue department is simply a part of the City of Gadsden. As such, the defendants argue that the "City of Gadsden Revenue Department" lacks the legal capacity to sue or be sued, and any claims against it are moot and should be dismissed. Finding that the "City of Gadsden Revenue Department" is not a legal entity separate from the City of Gadsden and must be dismissed. The court will read any claims against the "Revenue Department" as being against the City of Gadsden itself, the proper legal entity to be sued.

**B.    Automatic Stay under Bankruptcy Law**

When the plaintiff filed a Chapter 13 voluntary petition pursuant to 11 U.S.C. § 301 on May 1, 2007, the automatic stay of 11 U.S.C. § 362(a) became operative. The plaintiff alleges in her adversary proceeding complaint that the officers of the Gadsden revenue department violated the automatic stay of the Bankruptcy Court by serving her with summonses for operating her business without a license in violation of Gadsden ordinances. The defendants concede that revenue officials accompanied by police officers served the plaintiff for those violations on May 3-7, 2007. Thus, no genuine issue of material fact exists as to Count 1, because the defendants have admitted the plaintiff's factual grounds. As such, the only issue that remains is the legal

question of whether the defendants are entitled to judgment as a matter of law as to Count 1.

The plaintiff alleges that by serving her with summonses after the date on which she filed a Chapter 13 bankruptcy petition, the defendants violated the automatic stay provision of 11 U.S.C. § 362(a).  However, the defendants argue that the automatic stay does not apply to any criminal proceeding against the debtor, the commencement or continuation of any proceeding by the government to enforce its police or regulatory power, any audit by a governmental unit to determine tax liability, the issuance to the debtor of a notice of tax deficiency, a demand for tax returns, the withholding of professional or occupational licenses, or the making of an assessment for any tax.  *See* 11 U.S.C. § 362(b).  Section 362(b) reflects the overarching principle that "[t]he bankruptcy laws are not a haven for criminal offenders, but are designed to give relief from financial overextension."  *Talley v. Ala. Dept. of Pub. Safety*, 472 F. Supp. 2d 1323, 1325 (N.D. Ala. 2007) (internal quotation marks omitted).  The United States Supreme Court has stated that the bankruptcy laws must be considered "in light of the interests of the States in unfettered administration of their criminal justice systems." *Kelly v. Robinson*, 479 U.S. 36, 44 (1986). Serving the plaintiff with summonses constitutes the commencement of a criminal proceeding and/or a proceeding by City to enforce its regulatory power in granting business licenses.  Such proceedings are exceptions to the general stay provisions found in 11 U.S.C. § 362(a).  *See* 11 U.S.C. § 362(b).  Therefore, the court finds the provisions of 11 U.S.C. § 362(b) controlling and determines that the defendants did not violate the automatic stay provision and so are entitled to summary judgment as to Count 1.

**C.    Claims under § 1983**

The plaintiff alleges that the defendants violated her civil rights by serving her with summonses after she filed Bankruptcy; by following an alleged policy of harassment towards her

by inspecting her lounge and vending machines, in violation of the Fourth Amendment; and by threatening to imprison her for operating a business without a license, in violation of the Thirteenth Amendment. The defendants do not deny that the plaintiff was served with process or that her lounge was inspected by revenue officials after she filed for bankruptcy, nor do they deny that she was imprisoned for violating her probation by operating a business without a license. As such, no genuine issue of material fact exists, and the only issue that remains is the legal question of whether the defendants are entitled to judgment as a matter of law as to Count 2.

1.      **Individual Defendants – Qualified Immunity**

The individual defendants argue that they are entitled to qualified immunity as to Count 2. Qualified immunity protects government officials performing discretionary functions from suit in their individual capacities unless the official violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citation omitted). "Because qualified immunity is a defense not only from liability, but also from suit, it is important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." *Id*. (citing *GJR Invs., Inc., v. County of Escambia*, 132 F.3d 1359, 1370 (11th Cir. 1998)).

To receive qualified immunity, a government official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). Government officials act within the

scope of their discretionary authority if "the actions were (1) 'undertaken pursuant to the performance of [their] duties' and (2) 'within the scope of [their] authority.'" *Lenz v. Winburn*, 51 F.3d 1540, 1545 (11th Cir. 1995) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1998)).  Section 74-117 of the Gadsden Ordinances specifically authorizes "the director of revenue or any agent or employee designated by the director" to inspect and "examine the books, papers and records" of any person seeking to obtain or renew a business license to determine the proper license classification and fee amount.  (*See* doc. 33, exh. 22).  Furthermore, the Gadsden Ordinances also authorize any enforcement officer to issue a summons to anyone who violates the municipal code. Gadsden City Code, Ch. 82, Art. II, § 82-31, 2008, *available at* http://www.municode.com/resources/gateway.asp?pid=10817&sid=1 (last visited Sept. 8, 2008).

The court finds that the defendants' actions in serving the plaintiff with summonses for operating a business without a license, putting the plaintiff in jail for violating her probation by operating a business without a license, and inspecting the plaintiff's lounge to ascertain the proper classification for her occupational license fee were undertaken pursuant to the performance of their discretionary duties under the law.  The court further finds that the method of service and inspection – during business hours and, when the summons was delivered by a female revenue official, with the presence of police for the protection of the municipal officers – were reasonable and within the scope of the defendants' authority.

"Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate."  *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).   The Supreme Court has articulated a two part test to determine whether qualified immunity is appropriate.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).  First, the court must ask this threshold question: "Taken in the light most favorable to

the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right." *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  Second, "[i]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.* (citing *Saucier*, 533 U.S. at 201).

Addressing first the alleged Thirteenth Amendment violation, the plaintiff fails to state a claim under the Thirteenth Amendment, which declares that "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States."  U.S. Const. amend. XIII.  The primary purpose of the Amendment was to abolish the institution of African slavery as it existed at the time of the Civil War, and in every case subsequent in which the Supreme Court has "found a condition of involuntary servitude, the victim had no available choice but to work or be subject to legal sanction."  *United States v. Kozminski*, 487 U.S. 931, 942-43 (1988).  The Supreme Court has further recognized violations of the Thirteenth Amendment in cases where service was compelled by the constant threat of imprisonment, *United States v. Reynolds*, 235 U.S. 133 (1914);  where a man was forced by threat of legal sanctions to work off his debt owed to another, *Clyatt v. United States*, 197 U.S. 207 (1905); and where state law subjected debtors to prosecution and criminal punishment for failing to perform labor after receiving an advance payment, *Pollock v. Williams*, 322 U.S. 4 (1944).  The plaintiff in this case has failed to allege any facts that would suggest she was compelled to work, for fear of legal penalties, or that she was prosecuted for failing to perform labor after receiving an advance payment. Because the court determines that the plaintiff has not established any constitutional violation under the Thirteenth Amendment, the court need not reach the second prong of the Supreme Court's test

and determine whether the right was clearly established.

Turning now to the plaintiff's Fourth Amendment claims, the court determines that the plaintiff has also failed to state a claim for any violation of her Fourth Amendment rights.  To state a claim under the Fourth Amendment, the plaintiff must "demonstrate that [she] personally has an expectation of privacy in the place searched, and that [her] expectation is reasonable." *Minnesota v. Carter*, 525 U.S. 83, 86 (1998).  Commercial property is treated differently for Fourth Amendment purposes than residential property.  *United States v. Chaves*, 169 F.3d 687, 691 (11th Cir. 1999).  The Supreme Court has recognized that a reasonable expectation of privacy in commercial property is less than what a reasonable expectation of privacy in an individual's home would be.  *New York v. Burger*, 482 U.S. 691, 700 (1987).   Furthermore, the Supreme Court has found that business owners "[do] not have any reasonable expectation of privacy in areas of the [business property] where the public was invited to enter."  *Maryland v. Macon*, 472 U.S. 463, 469 (1985).

The defendants actions in entering the lounge, counting the number of vending machines, looking in the public bathrooms, and serving the plaintiff with summonses for operating her business without a license were all conducted in areas that the plaintiff "intentionally exposed to all who frequent the place of business" and "[do] not infringe a legitimate expectation of privacy."  *Macon*, 472 U.S. at 469 (citing *Katz v. United States*, 389 U.S. 347, 351 (1967) ("What a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection.").  The court finds that the defendants actions do not constitute a search under the Fourth Amendment and, therefore, that the defendants' actions did not violate the plaintiff's constitutional right to be free from an unreasonable search.

Because the court determines that no constitutional right has been violated, neither under

the Thirteenth nor the Fourth Amendment, the court need not address the second prong of the

Supreme Court's test and determine whether the right was clearly established. For the foregoing

reasons, the court finds that the individual defendants are entitled to summary judgment as a

matter of law as to Count 2, because they are shielded from liability and the plaintiff failed to

show a constitutional violation.

> **2.      City of Gadsden – Municipal Liability**

The plaintiff also seeks to hold the City of Gadsden liable for the alleged constitutional

violations of its agents. The City of Gadsden may be liable under § 1983 for the actions of its

agents and officers "only when municipal 'official policy' causes a constitutional violation."

*Gold v. City of Miami*, 151 F.3d 1346 (11th Cir. 1998). A municipality may not be held liable

for its employees' actions under a respondeat superior theory. *Mercado v. City of Orlando*, 407

F.3d 1152, 1161 (11th Cir. 2005) (citing *Samples v. City of Atlanta*, 846 F.2d 1328, 1333 (11th

Cir. 1988)). "It is only when the execution of the government's policy or custom . . . inflicts  the

injury that the municipality may be held liable." *City of Canton v. Harris*, 489 U.S. 378, 385

(1989) (internal quotation marks omitted). Thus, "to impose § 1983 liability on a municipality, a

plaintiff must show: (1) that [her] constitutional rights were violated; (2) that the municipality

had a custom or policy that constituted deliberate indifference to that constitutional right; and (3)

that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th

Cir. 2004).

Applying the facts of this case to the Eleventh Circuit's *McDowell* test, the court has

already determined that the plaintiff's factual allegations do not state a constitutional violation.

Furthermore, the plaintiff has failed to identify a municipal policy or custom, i.e., a persistent and

wide-spread practice, that caused her injury. *See Wayne v. Jarvis*, 197 F.3d 1098, 1105 (11th

Cir.1999).  Therefore, the court determines that the City of Gadsden is entitled to summary

judgment as to Count 2, because the plaintiff has failed as a matter of law to establish municipal

liability under § 1983.

**D.      Invasion of Privacy (Wrongful Intrusion)**

The plaintiff asserts a claim of invasion of privacy (wrongful intrusion) under Alabama

law.  The plaintiff alleges that the defendants subjected her to unwarranted publicity by serving

her with summonses at her place of business and by investigating the presence of vending

machines in her lounge in the presence of her landlord.  The defendants do not dispute the fact

that the plaintiff was served with summonses or that her lounge was inspected by revenue

officials for the purposes of counting vending machines to determine the proper license fee. *See*

Business License Code, Ch. 74, Art. III, § 74-91, Gadsden City Code, 2008,

http://www.cityofgadsden.com/Sites/S11/Documents/Revenue/2007524.2.Business%20License

%20Code.pdf (listing a separate vending machine fee in addition to the fee paid for a regular

business license).  Thus, no genuine issue of material fact exists as to Count 3, and the only

inquiry remaining is whether the defendants are entitled to judgment as a matter of law.

As a preliminary matter, defendant City of Gadsden asserts that it cannot be held liable

under Alabama law for the intentional tort of wrongful intrusion.  *See* Ala. Code § 11-47-190.

The Alabama Code provides for actions against municipalities only for "neglect, carelessness or

unskillfulness."  Ala. Code § 11-47-190.  The court determines that the City of Gadsden cannot

be held liable for any intentional tort and is entitled to summary judgment on Count 3.

Similarly, the individual defendants assert that they are entitled to state-agent immunity,

which shields them "'from liability if [they were] engaged in a discretionary function, instead of

a ministerial one, when the alleged [tort] occurs.'" *Ex parte Tuscaloosa County*, 796 So. 2d

1100, 1106 (Ala. 2000) (quoting *Defoor v. Evesque*, 694 So. 2d 1302, 1305 (Ala. 1997)).

"Exercising judgment in the enforcement of the criminal laws of the State" and "in the

administration of a department or agency of government" are recognized discretionary functions.

*Ex parte Cranman*, 792 So. 2d 392, 402 (Ala. 2000).  The court has already determined that the

individual plaintiffs are entitled to qualified immunity for their conduct in serving the

summonses and inspecting the plaintiff's lounge pursuant to her application for a business

license.  However, regardless of the defendants' immunity, the court also finds summary

judgment in favor of the defendants is due, because the plaintiff's wrongful intrusion claim lacks

merit.

The Alabama Supreme Court has defined the "wrongful intrusion" branch of the invasion

of privacy tort as the intentional intrusion, physical or otherwise, "'upon the solitude or seclusion

of another or his private affairs or concerns, . . . if the intrusion would be highly offensive to a

reasonable person.'" *Johnson v. Stewart*, 854 So. 2d 544, 547-48 (Ala. 2002) (quoting *Phillips v.

Smalley Maint. Servs., Inc.*, 435 So. 2d 705, 706, 708-09 (Ala. 1983)).  An intrusion upon the

plaintiff's place of business must be especially offensive to satisfy the elements of a wrongful

intrusion claim, because "[a]n expectation of privacy in commercial premises . . . is different

from, and indeed less than, a similar expectation in an individual's home."  *New York v. Burger*,

482 U.S. 691, 700 (1987).

In *Poole v. State*, the Alabama Supreme Court determined that "'a business operator has a

reasonable expectation of privacy only in those areas from which the public has been excluded.'"

596 So. 2d 632, 634-35 (Ala. 1992) (quoting *United States v. Dunn*, 480 U.S. 294, 316 (1987)).

The Alabama Supreme Court noted that no reasonable expectation of privacy exists in areas of a

business where the public is invited in finding that the business operator in that case "had no

reasonable expectation of privacy in the rest room utilized by the . . . patrons of his [business]." *Id.* at 635 (citing *Maryland v. Macon*, 472 U.S. 463, 469 (1985)).

In this case, the plaintiff had no reasonable expectation of privacy in the areas of the lounge the officials inspected for vending machines, including the restrooms.  As such, the officials' inspection of those areas cannot be considered a "highly offensive," wrongful intrusion.

Furthermore, where the industry is one that traditionally has been closely regulated, such that "the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections," the reasonableness of the expectation of privacy is further diminished. *Donovan v. Dewey*, 452 U.S. 594, 600 (1981).  In this case, the Gadsden Ordinances specifically require a business license to operate a business within the city and provide for inspections by city officials to determine the proper license classification and fees.  *See* Business License Code, Ch. 74, Art. III, Gadsden City Code, 2008, http://www.cityofgadsden.com/Sites/S11/Documents/ Revenue/2007524.2.Business%20License%20Code.pdf.  The plaintiff repeatedly applied for a business license pursuant to the Gadsden Business License Code.  In fact, by operating a lounge in Gadsden and seeking a business license there, the plaintiff inherently invited the City officials onto her premises to conduct exactly the kind of inspections carried out in this case.  As such, the plaintiff was on notice that her business could be subjected to inspections by revenue officials to determine the proper license classification and license fees.  Thus, the plaintiff's expectation of privacy was diminished, because she was on notice that her business could be subjected to periodic inspections by revenue officials to determine the proper business license classification and fees.

The intrusion in this case also was not "into a matter of sufficiently personal nature to rise to the level of a wrongful intrusion" into the plaintiff's emotional sanctum.  *See Martin*, 975 So.

2d at 994 (citing *Phillips*, 435 So. 2d at 711). A wrongful intrusion upon one's emotional

sanctum may occur when the intrusion is of a sufficiently personal nature. *Martin v. Patterson*,

975 So. 2d 984, 994 (Ala. Civ. App. 2007). In *Phillips*, the Alabama Supreme Court determined

that a wrongful intrusion into the plaintiff's emotional sanctum had occurred where she had been

subjected to demands, threats, and inquiries into the nature of the sexual relationship between her

and her husband. *Phillips*, 435 So. 2d at 711. By contrast, in *Martin* the court determined that

the defendant driving by the plaintiff's work site often, yelling insults at him in front of his co-

workers and employees, and threatening to film the plaintiff did not rise to the level of a

wrongful intrusion into sufficiently private matters. *Martin*, 975 So. 2d at 994. In this case, the

service of process at her place of business and the inspection of her premises by revenue officials

does not rise to the level of an intrusion on sufficiently private matters.

Therefore, the court determines that the plaintiff's wrongful intrusion claim lacks merit

and that the individual defendants are entitled to judgment as a matter of law. Thus, the court

grants summary judgment in favor of the individual defendants on Count 3.

**E.      Malicious Prosecution**[3]

The plaintiff alleges that the defendants maliciously prosecuted her by serving her with

summonses on May 3-7, 2007, for operating a business without a license after she had filed for

bankruptcy, causing her shame and loss of business. The defendants do not deny that the

plaintiff was served with summonses for violations on those days. Thus, no genuine issue of

material fact underlying the malicious prosecution claim exists, and the only remaining inquiry is

whether the defendants are entitled to judgment as a matter of law.

---

[3] The Count 4 malicious prosecution claim is listed as "Count VI" in the original
adversary proceedings complaint, but the Amended Complaint filed in this court (doc. 12)
corrects the typo to read "Count IV."

As a preliminary matter, defendant City of Gadsden asserts that it cannot be held liable under Alabama law for the intentional tort of wrongful intrusion.  *See* Ala. Code § 11-47-190.  The Alabama Code provides for actions against municipalities only for "neglect, carelessness or unskillfulness."  Ala. Code § 11-47-190.  The Alabama Supreme Court has determined that construing the language of § 11-47-190 "to include an action for malicious prosecution would be to expand the words beyond their normal meaning," which the Court declined to do.  *Neighbors v. City of Birmingham*, 384 So. 2d 113, 114 (Ala. 1980).  The court, therefore, grants summary judgment in favor of the City of Gadsden as to the Count 4 malicious prosecution claim.

Similarly, the individual defendants argue that they are entitled to state-agent immunity, which shields them "'from liability if [they were] engaged in a discretionary function, instead of a ministerial one, when the alleged [tort] occurs.'" *Ex parte Tuscaloosa County*, 796 So. 2d 1100, 1106 (Ala. 2000) (quoting *Defoor v. Evesque*, 694 So. 2d 1302, 1305 (Ala. 1997)).  Immunity is precluded, however, where the plaintiff shows that the state agent acted "willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law."  *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000).  The court has already determined that the individual plaintiffs are entitled to qualified immunity for their conduct in serving the summonses and inspecting the plaintiff's lounge pursuant to her application for a business license.  However, regardless of the defendants' immunity, the court also finds summary judgment in favor of the defendants is due, because the plaintiff's malicious prosecution lacks factual and legal support.

To succeed on a claim for malicious prosecution, the plaintiff must show the following elements: (1) a prior judicial proceeding, (2) instigated by the defendant (3) without probable cause and (4) with malice, (5) which was terminated in favor of the plaintiff, and (6) damages.

*Delchamps, Inc. v. Larry*, 613 So. 2d 1235, 1238 (Ala. 1992) (citing *Brown v. Parnell*, 386 So. 2d 1137, 1138 (Ala. 1980)).  Probable cause exists when the particular facts and circumstances are sufficient to warrant a person of reasonable caution in the belief that an offense has been committed.  *Delchamps*, 613 So. 2d at 1238.  "[A] conviction is prima facie evidence of the existence of probable cause for instituting the prosecution," but "this presumption can be rebutted by competent evidence that 'clearly overcomes' the presumption."  *Id.* (quoting *Brown*, 386 So. 2d at 1138).

The evidence indicates that the plaintiff was convicted of failing to file liquor tax returns and occupation license fee returns in August 2004; failing to file liquor gross receipt affidavits in September 2005; doing business without a license in June 2006; failing to file sales tax returns, occupational license fee returns, and liquor gross receipt affidavits in March 2007; and violating her probation and doing business without a license in May 2007.  The plaintiff has appealed those convictions, and her appeals are still pending.  These prosecutions were not terminated in favor of the plaintiff, and the convictions constitute prima facie evidence such that probable cause for the prosecution of those charges is presumed.  The plaintiff has failed to establish a prima facie case of malicious prosecution and, furthermore, has failed to rebut with evidence clearly overcoming the presumption of probable cause to prosecute.  As such, the court finds that the individual defendants are entitled to judgment as a matter of law as to those prosecutions.

## F.     Negligence

The plaintiff alleged negligence under Alabama law in her original complaint, but her Amended Complaint seems to strike the original Count 5 negligence claim.  To the extent the plaintiff asserts a negligence cause of action, the negligence claim is precluded by the six-month notice statutes, because the face of the complaint shows that any negligence claims would have

accrued on December 6, 2005.  Ala. Code §§ 11-47-23 & 11-47-192.  As such, any negligence claim shall be dismissed as barred by the six-month notice statutes.

The new Count 5 in the Amended Complaint seems to allege a claim under 42 U.S.C. § 1983.  To the extent that the new Count 5 simply re-alleges the § 1983 claims of Count 2, it shall be stricken as duplicitous.  However, to the extent that the new Count 5 differs from Count 2, it is insufficient to state a claim upon which relief can be granted and will be dismissed.

**G.    Constitutionality of Municipal Ordinance**

The plaintiff alleges that the Gadsden Ordinance O-60-01, now codified as § 74-68, is unconstitutional, because it is overbroad and does not comport with the requirement that local ordinances contain "reasonable time, place, and manner" restrictions.  *See United States v. Albertini*, 472 U.S. 675, 688-89 (1985) (stating that regulations burdening the time, place, and manner of expression must be evaluated in terms of their general effect).  Further, the plaintiff alleges that the ordinance is unconstitutional because it does not provide for an appeal or review, amounts to an unlawful search and seizure, violates her rights to equal protection and due process, and constitutes cruel and unusual punishment.  Notwithstanding those arguments, Alabama Code §6-6-227 requires that the plaintiff serve the attorney general of the state and that the attorney general be heard in any proceeding that challenges that constitutionality of a municipal ordinance.  Section 6-6-227 also requires <u>actual</u> service of process, not just service under Federal Rule of Civil Procedure 5.  Thus, the plaintiff's failure to properly serve process on the attorney general is a fatal flaw.  *Ex parte St. Vincent's Hosp.*, 652 So. 2d 225 (Ala. 1994) ("When a party challenging the constitutionality of a statute fails to serve the attorney general, the trial court has no jurisdiction to decide the constitutional claim, and any judgment regarding that claim is void.").

Furthermore, the plaintiff has contested the constitutionality of the Gadsden ordinance in her appeals of her criminal convictions in state court.  "No plaintiff is entitled to prosecute two actions in the courts of this state at the same time for the same cause . . . . [T]he pendency of the former [action] is a good defense to the latter." Ala. Code § 6-5-440.   Any consideration of the constitutionality argument by this court would be duplicitous and improper.  *See, e.g., Weaver v. Hood*, 577 So. 2d 440, 442 (Ala. 1991) (citing Ala. Code § 6-5-440).  The court, therefore, dismisses the plaintiff's claim that the Gadsden ordinance is unconstitutional.

## CONCLUSION

For the reasons stated above, the court concludes that it must GRANT the defendants' motion for summary judgment as to the Count 1 claims for alleged violations of the automatic stay of proceedings against the plaintiff after she filed for bankruptcy, because the proceedings brought against the plaintiff fall into the exceptions to the automatic stay general rule.

The court also concludes that it must GRANT the individual defendants' motion for summary judgment as to the Count 2 claims under § 1983, because they are shielded by qualified immunity, because the plaintiff has not established the violation of any of her constitutional rights.  Furthermore, the court concludes that the City of Gadsden's motion for summary judgment as to the Count 2 claims under § 1983 shall be GRANTED, because the plaintiff has failed to establish § 1983 municipal liability under the *McDowell* test.

The court concludes that it must GRANT defendant the City of Gadsden's motion for summary judgment as to the Count 3 and 4 claims for wrongful intrusion and malicious prosecution, respectively, because a municipality can only be held liable under Alabama law for "neglect, carelessness or unskillfulness."  Furthermore, the court concludes that it must GRANT the individual defendants' motion for summary judgment as to the Count 3 and 4 claims for

wrongful intrusion and malicious prosecution, respectively, because the plaintiff's claims lack merit as a matter of law.

The court finds that the plaintiff's claims under Count 5 are unclear. To the extent that the Count 5 listed in the Amended Complaint asserts a claim for negligence, as did the Count 5 in the original adversary proceeding complaint, the court concludes that any such negligence claim shall be DISMISSED as barred by the six-month notice statutes.  Ala. Code. §§ 11-47-23, 11-47-192.  To the extent that the new Count 5 listed in the Amended Complaint re-alleges the § 1983 claims of Count 2, it shall be STRICKEN as duplicitous.  To the extent the new Count 5 differs from the Count 2 § 1983 claims, it will be DISMISSED for failure to state a claim.

Additionally, the court concludes that it does not have jurisdiction to address the constitutional claims in Count 6, because the plaintiff failed to properly serve the Attorney General with notice of the constitutional challenge.  Furthermore, the plaintiff is already asserting the constitutionality arguments in the appeals of her municipal convictions. Thus, this court lacks jurisdiction to decide the constitutional claim and it will be DISMISSED.

Finally, the court determines that the "City of Gadsden Revenue Department" is not a legal entity with capacity to be sued, but rather is a part of defendant the City of Gadsden.  The court, however, reads any claims asserted against the "Revenue Department" as being against the City of Gadsden itself, the proper legal entity to be sued.

DATED this 16th day of September, 2008.


KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE